**Affirmed and Memorandum Opinion filed August 20, 2024.**



In The

# Fourteenth Court of Appeals

### NO. 14-24-00240-CV

## IN THE INTEREST OF E.A.O.E. AKA E.O.E., G.E.O.E. AKA G.O.E., CHILDREN

### On Appeal from the 313th District Court
### Harris County, Texas
### Trial Court Cause No. 2022-01137J

## MEMORANDUM OPINION

Appellant C.O. (Father) appeals the trial court's final order of termination of his parental rights appointing the Department of Family and Protective Services (Department) as sole managing conservator of his children, E.A.O.E. (Edward) and G.E.O.E. (Gabrielle).[1] *See* Tex. Fam. Code § 263.405(a). The trial court terminated Father's parental rights on predicate grounds of endangerment, and failure to comply with a family service plan. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (O). The

---

[1] Edward and Gabrielle are pseudonyms, which we use to protect the minors in this case. *See* Tex. R. App. P. 9.8.

trial court further found that termination of Father's parental rights was in the children's best interest. *See* Tex. Fam. Code § 161.001(b)(2). On appeal Father challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of his parental rights is in the best interest of the children. We affirm.

## BACKGROUND

The children came to the attention of the Department on March 1, 2022, due to a report of physical abuse of Gabrielle when Gabrielle was three months old. Gabrielle arrived at Texas Children's Hospital unresponsive; initial assessments revealed head trauma and eight broken and displaced ribs. Mother and Father reported the injuries were the result of a fall from a baby swing. At the time Gabrielle came to the hospital Edward was under two years old.

The children were initially removed from the parents because the parents' explanation of the cause of Gabrielle's injuries was inconsistent with the severity of the injuries. In addition to the aforementioned head trauma and broken ribs, Gabrielle had retinal bleeding in her eyes. Father also admitted shaking Gabrielle. The Department recommended a safety plan for the parents and requested they engage in Family Based Safety Services (FBSS). Both parents refused. When Gabrielle was released from the hospital three weeks later, she was released to Mother with the condition that Father not be permitted to live in the same house with the children. On July 1, 2022, the Department filed an original petition seeking termination of both parents' rights. The Department removed the children from Mother's home because Mother permitted Father to move back into the home and was not taking Gabrielle to necessary medical appointments to address her injuries.

On June 28, 2023, the trial court found good cause to extend the dismissal date to December 29, 2023. *See* Tex. Fam. Code § 263.401.

2

Father was indicted for intentionally and knowingly causing bodily injury to Mother on or about January 1, 2023. On June 26, 2023, Father was indicted for injury to a child.

Trial commenced October 3, 2023. Dr. Sarah Risen, a pediatric neurologist at Texas Children's Hospital, testified that when Gabrielle came into the hospital, she had sustained a severe traumatic brain injury and her "level of consciousness was at the lowest possible level." Gabrielle's brain was swelling, and she had to undergo life-saving emergency surgery. The brain injury caused Gabrielle to be delayed "in every single area of her development" including motor skills, language, and eating. Gabrielle had to be fed through a tube in her nose.

Risen testified that the severity of the injuries Gabrielle experienced was consistent with a high-speed car accident or shaken baby syndrome, and did not typically happen in routine childhood activities, such as falling from a baby swing. The bleeding in the brain, hemorrhages behind the eyes, and broken ribs were consistent with injuries sustained as a result of shaken baby syndrome. Severe brain trauma such as that experienced by Gabrielle leads to a lifelong increased risk for seizures and other neuro-developmental complications. At the time of trial Gabrielle was still unable to get all her calories by mouth and had to receive some nourishment through a G-button, which replaced a G-tube she had earlier.[2] As she grows Gabrielle's needs will be extensive, including speech therapy, occupational therapy, aid with social communication, twice-yearly visits to a neuropsychologist, and treatment for vision loss due to the brain injury. Gabrielle is at high risk for learning problems and cognitive delays. Risen testified there was no other reason for the

---

[2] Gabrielle initially needed a G-tube, which is placed through the nose to feed an individual who is unable to swallow. The tube was later replaced with a G-button, which goes through the navel to help feed Gabrielle.

injuries experienced by Gabrielle other than abuse.

Dr. Marcella Donaruma-Kwoh, a pediatric child abuse expert, was consulted on the day Gabrielle was admitted to the hospital. While being transported to the hospital via helicopter Gabrielle experienced seizures and her body temperature dropped to 87 degrees. Gabrielle experienced injury to both sides of her brain; her right retina was detached, and the cavity was full of blood. Gabrielle's injuries were inconsistent with the parents' report that she fell roughly two feet from a baby swing. Gabrielle had an emergency craniotomy to relieve pressure on her brain and drain blood from her skull. Gabrielle was hospitalized for 23 days. Donaruma-Kwoh discussed Gabrielle's condition with the neurosurgeons, and they concluded that her injuries were caused by abuse. The doctors concluded that Gabrielle's rib fractures resulted from Father's attempts at CPR, but her other injuries were caused by being shaken violently. Donaruma-Kwoh testified that Father told Mother he had shaken Gabrielle.

Father was home alone with the children when Gabrielle was injured. At trial, when Father was asked how Gabrielle sustained her injuries he exercised his Fifth Amendment right to remain silent. Father was charged with injury to a child and released on bail. While on bail for that offense, on January 1, 2023, Father was arrested for assaulting Mother. Father, testifying from jail, admitted physically assaulting Mother in January 2023. Before Father was incarcerated, he took clothing to the children, but has not financially supported them either while out of jail or before. Father was given a family service plan written in Spanish, but did not finish reading the plan despite testifying he understood that completing the services on the plan was necessary for the return of his children.

The foster mother testified that she had Edward beginning July 2, 2022, and Gabrielle beginning March 21, 2023. Edward bonded with the foster parents

immediately while Gabrielle was not as social and did not bond right away. By the time of trial Gabrielle was also bonded with the foster parents. Gabrielle was improving every day, including taking about 25 percent of her food orally. The foster parents participated in 30 hours of observation training observing other children who have similar medical needs. The foster parents also received training at Texas Children's Hospital from Gabrielle's gastroenterologist and nutritionist. Both children attend a Montessori school near their home. A home health nurse goes to the school to help with Gabrielle's feedings. Gabrielle has also bonded with her brother. Both foster parents want to adopt the children and feel they understand the complexity of Gabrielle's medical issues and how to care for them. The foster parents' parents and some of their siblings have also undergone training so they can support the foster parents in Gabrielle's care. If the foster parents were unable to adopt they would do what they needed to do to help the children but would seek legal counsel on the issue.

Sabrina Stranton, the conservatorship caseworker for the Department, testified that the Department removed the children from the home in July after Gabrielle's injuries in March because Mother permitted Father to move back into the home and was not taking Gabrielle to necessary medical appointments to address her injuries. During a welfare check a caseworker observed Gabrielle being fed with a bottle propped up by a blanket, which was inappropriate because Gabrielle could not swallow and had a feeding tube placed in her nose at the time. A caseworker also observed Mother feeding Gabrielle table food with a spoon.

Stranton was unable to meet with Mother until June 2023, almost a year after the children were removed, because Mother gave Stranton an incorrect address. In June 2023, Stranton confirmed Mother's address and visited her at home. Mother regularly provided pay stubs to the Department, completed a psychosocial

assessment, and completed individual counseling as recommended by the assessment. Mother completed a domestic violence course and acknowledged that she needed to provide a safe and stable home for her children and that it was not safe for Father to be around the children. Stranton testified, however, that the Department had recorded jail calls between Mother and Father in which Mother expressed a desire to continue a relationship with Father. Mother told her therapist that she had filed for divorce from Father, but Mother did not follow through with the divorce allowing it to be dismissed for want of prosecution. In sum, Mother completed her family service plan but, according to Stranton, was not honest in her reports to providers.

Stranton testified that Father completed a psychosocial assessment and a parenting class. Father did not provide proof of income, or proof of housing. Father did not refrain from criminal activity, as evidenced by his incarceration for alleged assault of Mother. Stranton further testified that the Department was concerned if the children were returned to Father they would be endangered due to Father's past violent conduct.

The trial court terminated Father's parental rights on the predicate grounds of endangerment and failure to comply with a family service plan. The trial court further found that termination of Father's rights was in the best interest of the children. The trial court did not terminate Mother's parental rights, but designated the Department as the sole managing conservator of the children and appointed Mother possessory conservator. Father timely appealed.

### ANALYSIS

Father concedes the evidence is legally and factually sufficient to support termination on the predicate grounds of endangerment. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E). Father challenges the legal and factual sufficiency of the

6

evidence to support termination on the trial court's findings that he failed to comply with the service plan and termination of his rights was in the children's best interest. *See* Tex. Fam. Code § 161.001(b)(1)(O) & 161.001(b)(2).

## I.      Standards of Review

In a proceeding to terminate the parent-child relationship under Family Code section 161.001, the petitioner must establish by clear and convincing evidence one or more acts or omissions enumerated under subsection (1) of section 161.001(b) and that termination is in the best interest of the child under subsection (2). *See* Tex. Fam. Code § 161.001; *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *See In re of J.F.-G.*, 627 S.W.3d 304, 310 (Tex. 2021); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.— Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *See In re A.C.*, 560 S.W.3d 624, 629 (Tex. 2018); *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

Due to the severity and permanency of terminating the parent-child relationship, Texas requires clear and convincing evidence to support such an order. *See* Tex. Fam. Code § 161.001; *In re J.F.-G.*, 627 S.W.3d at 310; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a "correspondingly searching standard of appellate review." *In re A.C.*, 560 S.W.3d at 630.

In reviewing the legal sufficiency of the evidence in a parental termination case, we must consider all evidence in the light most favorable to the challenged

7

finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that the finding was true. *See In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). We assume that the fact finder resolved disputed facts in favor of the finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *See id.*; *In re G.M.G.*, 444 S.W.3d 46, 52 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Because of the heightened standard, we also must be mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *In re D.R.A.*, 374 S.W.3d at 531.

In reviewing the factual sufficiency of the evidence under the clear-and-convincing standard, we consider and weigh disputed evidence contrary to the finding against all the evidence favoring the finding. *In re A.C.*, 560 S.W.3d at 631; *In re J.O.A.*, 283 S.W.3d at 345. If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.O.A.*, 283 S.W.3d at 345. We give due deference to the fact finder's findings, and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

To affirm a termination judgment on appeal, a court need uphold only one termination ground—in addition to upholding a challenged best-interest finding—even if the trial court based the termination on more than one ground. *In re N.G.*, 577 S.W.3d at 232; *In re L.M.*, 572 S.W.3d 823, 832 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

## II.     Legally and factually sufficient evidence supports the trial court's finding that Father endangered the children.

Father's parental rights were terminated on the predicate grounds of

endangerment and failure to follow the family service plan. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (O). Father concedes on appeal that the evidence was legally and factually sufficient to support the trial court's finding that he endangered the children.

An unchallenged fact finding is binding on an appellate court "unless the contrary is established as a matter of law, or if there is no evidence to support the finding." *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (unchallenged findings of fact supported termination under section 161.001(1)(O) because record supported those findings).

Our review of the record shows the trial court's findings on subsections 161.001(1)(D) and (E) are supported by legally and factually sufficient evidence. Those subsections require clear and convincing evidence that Father:

> (D) knowingly placed or knowingly allowed the child[ren] to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[ren]; [or]
>
> (E) engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct which endangers the physical or emotional well-being of the child[ren]."

Tex. Fam. Code § 161.001(b)(1)(D), (E).

Endangerment under subsection D may be established by evidence related to the children's environment. *In re A.S.*, 261 S.W.3d 76, 83 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). "Environment" refers to the acceptability of living conditions, as well as a parent's conduct in the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards. *In re L.E.R.*, 650 S.W.3d 771, 784 (Tex. App.—Houston [14th Dist.] 2022, no pet.). Inappropriate, abusive, or unlawful conduct by a parent

9

or other persons who live in the children's home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection D. *Id.*

Under subsection E, the evidence must show the endangerment was the result of the parent's conduct, including acts, omissions, or failure to act. *In re A.L.H.*, 515 S.W.3d 60, 91 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). Termination under subsection E must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *Id.*

Father concedes the evidence of domestic violence in the home is legally and factually sufficient to support the trial court's finding under subsection D. *See In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("[d]omestic violence, want of self control, and propensity for violence may be considered as evidence of endangerment."). Father further concedes the extensive medical evidence as to Gabrielle's injuries is legally and factually sufficient to support the trial court's finding under subsection E. *See In re J.D.*, 436 S.W.3d 105, 114 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (medical evidence that child's physical injuries were intentionally caused and consistent with physical abuse was sufficient to support finding of endangerment). Father declined to testify about the charge of injury to a child by asserting his Fifth Amendment right against self-incrimination, permitting the trial court to draw an adverse inference concerning the charges. *See In re J.J.*, No. 14-19-00622-CV, 2020 WL 428859, at *6 (Tex. App.—Houston [14th Dist.] Jan. 28, 2020, pet. denied) (mem. op.) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 316–19 (1976) (in civil cases, court may draw adverse inference from assertion of Fifth Amendment privilege)).

Because the trial court's findings on subsections 161.001(b)(1)(D) and (E) are supported by the record, we are bound by them. *See In re E.C.R.*, 402 S.W.3d at 249.

These findings are sufficient to support a decree of termination when there is also a finding that termination is in the children's best interest. *In re A.V.*, 113 S.W.3d at 362. In light of our conclusion regarding the trial court's findings on subsections 161.001(b)(1)(D) and (E), we need not review the evidence supporting the finding under subsection 161.001(b)(1)(O).

We overrule Father's first two issues.

**III.    Legally and factually sufficient evidence supports the trial court's finding that termination of Father's parental rights was in the children's best interest.**

The trial court found that termination of Father's parental rights is in the children's best interest. *See* Tex. Fam. Code § 161.001(b)(2). Father challenges this finding asserting the evidence is legally and factually insufficient to support it.

The best-interest inquiry is child-centered and focuses on the child's well-being, safety, and development. *In re A.C.*, 560 S.W.3d at 631. The trier of fact may consider several factors to determine the child's best interest, including: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parents' acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re E.R.W.*, 528 S.W.3d 251, 266 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also* Tex. Fam. Code § 263.307(b) (listing factors to consider in evaluating parents' willingness and ability to provide the child with a safe

environment).

Courts apply a strong presumption that the best interest of the children is served by keeping the children with their natural parents, and it is the Department's burden to rebut that presumption. *In re D.R.A.*, 374 S.W.3d at 531. Prompt and permanent placement in a safe environment also is presumed to be in the children's best interest. Tex. Fam. Code § 263.307(a). A finding in support of best interest does not require proof of any unique set of factors, nor does it limit proof to any specific factors. *See Holley*, 544 S.W.2d at 371–72. Evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the children's best interest. *In re C.H.*, 89 S.W.3d at 28. And a fact finder may measure a parent's future conduct by his past conduct in determining whether termination of parental rights is in the children's best interest. *In re L.G.*, No. 14-22-00335-CV, 2022 WL 11572541, at *11 (Tex. App.—Houston [14th Dist.] Oct. 20, 2022, no pet.) (mem. op.).

Before we review the *Holley* factors in light of the evidence at trial, we address Father's primary argument challenging the trial court's best-interest finding. Father asserts that because Mother's rights have not been terminated, the children cannot be adopted by the foster parents and their placement is "speculative at best." Placement plans and adoption are relevant to the best-interest inquiry, but "the lack of evidence about definitive plans for permanent placement and adoption cannot be the dispositive factor." *In re L.D.T.P.*, No. 14-22-00815-CV, 2023 WL 3115756, at *9 (Tex. App.—Houston [14th Dist.] Apr. 27, 2023, no pet.) (mem. op.) (quoting *In re C.H.*, 89 S.W.3d at 28). The issue is whether, on the entire record, a fact finder could reasonably form a firm conviction or belief that termination of the parent's rights would be in the children's best interest even if the agency is unable to identify with precision the child's future home environment. *In re A.M.*, No. 14-23-00415-

12

CV, 2023 WL 7206735, at *10 (Tex. App.—Houston [14th Dist.] Nov. 2, 2023, pet. denied) (mem. op.). We therefore turn to an analysis of the *Holley* factors.

## A.    The desires of the children.

At the time the final hearing began Edward was almost three years old and Gabrielle was almost two. Father admits both children were too young to express their desires. When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well cared for by them, and have spent minimal time with a parent. *In re A.R.D.*, — S.W.3d — No. 14-24-00010-CV, 2024 WL 1662392, at *8 (Tex. App.—Houston [14th Dist.] Apr. 18, 2024, pet. denied). Gabrielle was only three months old when she was injured, and Edward was one year old at the time. After Gabrielle's hospital stay she was released to Mother with the condition that Mother not allow Father to live with the children. When Mother violated that condition Father was arrested and the children were removed in July 2022. Father was incarcerated on January 1, 2023; therefore, the children spent minimal time with Father.

In contrast, the foster parents had the children for more than a year before the final hearing. The foster parents underwent extensive training to care for Gabrielle's medical needs. They also had family members who underwent training to provide support to the foster parents. Edward bonded with the foster father first, then with the foster mother. While Gabrielle experienced social anxiety she was also bonding with the foster parents. This factor weighs in favor of the trial court's best-interest finding.

## B.    The present and future physical and emotional needs of the children.

Father concedes that the evidence establishes the foster parents are meeting all of the children's needs, but asserts no evidence was presented to establish that

either biological parent was unable to meet the emotional and physical needs of their children. At trial, evidence was admitted that Father was incarcerated since January 2023 and was subject to no bond due to an immigration hold. Moreover, Father admitted he was incarcerated because he assaulted Mother. A video of the assault was admitted into evidence at trial.

In addition to violence against Mother, Father was the only adult caregiver when Gabrielle suffered injuries as a result of shaken baby syndrome. The trial court reasonably could have concluded that Father caused Gabrielle's injuries. This evidence of violence and abuse is evidence reflecting that Father cannot meet the children's physical and emotional needs. *See In re M.L.G.J.*, No. 14-14-00800-CV, 2015 WL 1402652, at *8 (Tex. App.—Houston [14th Dist.] Mar. 24, 2015, no pet.) (mem. op.) (citing *In re J.I.T.P.*, 99 S.W.3d at 845 (The fact finder may infer from past conduct endangering a child's well-being that similar conduct will recur if the child is returned to the parent). This factor weighs in favor of the trial court's best-interest finding.

### C. Emotional and physical danger to the children now and in the future.

Father acknowledges that evidence of domestic violence and physical abuse weighs in favor of termination, but asserts that the evidence reflects Edward had no signs of abuse or neglect and appeared well-cared for at the time he was removed from his parents. Father asserts "this factor is neutral and therefore does not overcome the parental presumption."

To the contrary, "[c]hild abuse necessarily endangers a child's physical or emotional well-being." *In re M.F.M.*, No. 14-23-00974-CV, 2024 WL 3156150, at *7 (Tex. App.—Houston [14th Dist.] June 25, 2024, pet. filed) (citing *In re A.B.M.*, No 14-21-00687-CV, 2022 WL 1311067, at *5 (Tex. App.—Houston [14th Dist.]

14

May 3, 2022, pet. denied) (mem. op.). Acts of violence or abuse directed toward one child can endanger other children who are not the direct victims of the conduct and support termination of parental rights to the other children. *See In re A.C.*, No. 14-23-00577-CV, 2024 WL 440263, at *11 (Tex. App.—Houston [14th Dist.] Feb. 6, 2024, pet. filed) ("Evidence of violence in the home supports a finding that the placement of children with their parent is likely to subject the children to emotional and physical danger now and in the future."). This factor weighs in favor of the trial court's best-interest finding.

## D. Parenting abilities of the individuals seeking custody and stability of the home or proposed placement.

Father does not challenge the parental abilities of the foster parents or the stability of their home, but challenges the lack of permanent adoption plans due to the fact that Mother's rights have not been terminated. To recap, this court has held that the lack of evidence about definitive plans for permanent placement and adoption cannot be the dispositive factor. *In re L.D.T.P.*, No. 14-22-00815-CV, 2023 WL 3115756, at *9 (Tex. App.—Houston [14th Dist.] Apr. 27, 2023, no pet.) (mem. op.). We have further held that abusive conduct is relevant to a parent's parental abilities and his abilities to care for his children's needs. *See In re A.C.*, 2024 WL 440263, at *12.

## E. Programs available to assist those seeking custody.

Father asserts there was no evidence of such programs admitted at trial. To the contrary, Father testified he completed parenting classes before being incarcerated. The caseworker investigated what services were provided in jail so that Father could continue working his services while incarcerated. The trial court could have reasonably concluded that programs were available but Father failed to take advantage of those programs, particularly before he was incarcerated. "A fact finder

may infer from a parent's failure to take the initiative to complete the services required to regain possession of his child that he does not have the ability to motivate himself to seek out available resources needed now or in the future." *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). These factors weigh in favor of termination.

Viewing the evidence in the light most favorable to the judgment for our legal-sufficiency analysis and all the evidence equally for our factual-sufficiency analysis, we conclude that a reasonable fact finder could have formed a firm belief or conviction that termination of Father's parental rights was in the children's best interest. See Tex. Fam. Code § 161.001(b)(2). We overrule Father's third issue.

### CONCLUSION

We affirm the trial court's judgment.

/s/ Jerry Zimmerer
Jerry Zimmerer
Justice

Panel consists of Justices Jewell, Bourliot, and Zimmerer.

16